Argued and submitted May 27, 2015, reversed and remanded March 1, 2017

Marshall JOHNSON,
*Plaintiff-Respondent,*

*v.*

J. G. WENTWORTH ORIGINATIONS, LLC,
a Nevada limited liability company,
*Defendant-Respondent,*

*and*

METROPOLITAN LIFE INSURANCE COMPANY;
and Metropolitan Tower Life Insurance Company,
aka Metlife Tower Resources Group, Inc.,
*Other-Appellants.*

Multnomah County Circuit Court
140201933; A156843

391 P3d 865

Stephen R. Harris, Pennsylvania, argued the cause for appellants. With him on the briefs were Michael T. Stone, Christopher Allnatt, and Brisbee & Stockton LLC.

Julie A. Weis argued the cause for respondent J. G. Wentworth Originations, LLC. With her on the brief was Sara Ghafouri.

No appearance for respondent Marshall Johnson.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.

## HADLOCK, C. J.

Marshall Johnson is the beneficiary of a right to periodic payments under a structured settlement agreement. Petitioner J. G. Wentworth Originators, LLC (J. G. Wentworth) brought this special proceeding under ORS 33.857 to 33.875 (2005),[1] seeking to purchase at a discount Johnson's right to one future annuity payment and a portion of a future lump sum payment. The trial court issued a judgment approving the transfer, and Metropolitan Tower Life Insurance Company (Met Tower), the obligor under the structured settlement agreement, appeals. We conclude that the trial court erred in approving the transfer, because the structured settlement agreement included an anti-assignment clause that Met Tower has a right to enforce and that prohibited Johnson from transferring his interest in the payments. We therefore reverse.

The facts are undisputed. In 2006, Johnson, who was then a minor, was injured an automobile accident. In 2008, the tortfeasor's insurer, State Farm, and Johnson's guardian *ad litem* settled a personal injury claim on behalf of Johnson through a structured settlement agreement. Under the agreement, Johnson was entitled to receive a first payment of $5,000 on October 5, 2008, five annual payments of $10,000 each, beginning in October 5, 2010, and a final payment of $41,970.25 on October 5, 2020. The structured settlement agreement contained a clause stating that Johnson did not "have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise." It is not disputed that the clause prohibited Johnson from transferring his interest in future payments, that is, that it is an anti-assignment clause. Thus, on its face, the structured settlement agreement prohibited the transfer of Johnson's interest in the future payments.

---

[1] The statutes were amended in 2013. Or Laws 2013, ch 236. The amendments were effective January 1, 2014, and are not applicable to this case. All subsequent references are to the 2005 version of the statutes.

But State Farm could assign *its* obligation under the settlement agreement. Under Internal Revenue Code, 26 USC section 130, a tortfeasor or its insured may assign an obligation under a structured settlement agreement to a "qualified assignee"—an independent third party who assumes the obligation for making the periodic payments. The third-party assignee receives favorable income tax treatment, because the funds received by the assignee from the original obligor (to be used for the purchase of an annuity to fund the periodic payments) are excluded from the assignee's income. 26 USC § 130(a). To meet the requirements of a "qualified assignment," the payments "cannot be accelerated, deferred, increased, or decreased by the recipient of such payments." 26 USC section 130 (c)(2)(B).

Consistent with 26 USC section 130(c)(2)(B), Johnson's structured settlement agreement with State Farm provided that State Farm could assign its payment obligation to Met Tower, and that Johnson was required to accept the assignment.[2] Contemporaneously with the structured settlement agreement, State Farm and Met Tower executed a qualified assignment agreement (QAA) under which Met Tower assumed responsibility for making the structured settlement payments to Johnson.[3] Like the settlement agreement, the QAA included a paragraph prohibiting Johnson from transferring his right to receive payments under the structured settlement agreement, except that a transfer could be made with advance approval of a court, pursuant to Internal Revenue Code section

_____

[2] As relevant, the settlement agreement provided:

"Claimant acknowledges and agrees that the Respondent and/or the Insurer may make a 'qualified assignment,' within the meaning of Section 130(c) of the Internal Revenue Code of 1986, as amended, of the Respondent's and/or the Insurer's liability to make the Periodic Payments set forth in [the agreement] to MetLife Tower Resources Group, Inc., ('Assignees'). The Assignees' obligation for payment of the Periodic Payments shall be no greater than that of the Respondent and/or the Insurer * * * immediately preceding the assignment of the Periodic Payment obligation."

[3] The QAA was actually executed 11 days *before* the execution of the structured settlement agreement.

5891(b)(2),[4] if the transfer "otherwise complie[d] with applicable state law."[5]

In 2013, Johnson, who was then 23 years of age, was in need of funds. He contacted J. G. Wentworth, a factoring company, expressing an interest in selling at a discount his annuity payment due in 2014, and half of his final payment

---

[4] The term "factoring" has come to be associated with at least some such transfers, that is, with a secondary market in which "factoring companies"—like J. G. Wentworth—purchase rights to receive future payments associated with structured settlements, sometimes at a substantial discount. *See* Daniel W. Hindert & Craig H. Ulman, *Transfers of Structured Settlement Payment Rights: What Judges Should Know about Structured Settlement Protection Acts,* 44 No. 2 Judges' J 19, 20 (Spring 2005). 26 USC section 5891(a) imposes a "tax equal to 40 percent of the factoring discount as determined under subsection (c)(4) with respect to such factoring transaction" on any person who "acquires *** structured settlement payment rights in a structured settlement factoring transaction" except when "the transfer of structured settlement payment rights is approved in advance in a qualified order."

26 USC section 5891(b)(2) defines a "qualified order" as a "final order, judgment, or decree" that:

"(A) finds that the transfer described in paragraph (1)—

"(i) does not contravene any Federal or State statute or the order of any court or responsible administrative authority, and

"(ii) is in the best interest of the payee, taking into account the welfare and support of the payee's dependents, and

"(B) is issued—

"(i) under the authority of an applicable State statute by an applicable State court, or

"(ii) by the responsible administrative authority (if any) which has exclusive jurisdiction over the underlying action or proceeding which was resolved by means of the structured settlement."

Congress enacted 26 USC section 5891 in 2001 to combat abuses associated with structured settlement factoring. *See* Hindert & Ulman, 44 No. 2 Judges' J at 20.

[5] The QAA provided:

"**Acceleration, Transfer or Payment Rights.** None of the Periodic Payments and no rights to or interest in any of the Periodic Payments *** can be

"I. ***

"II. Sold, assigned, pledged, hypothecated or otherwise transferred or encumbered, either directly or indirectly, unless such sale, assignment, pledge, hypothecation or other transfer or encumbrance *** has been approved in advance in a 'Qualified Order' as described in Section 5891(b)(2) of the [Internal Revenue] Code (a 'Qualified Order') and otherwise complies with applicable state law, including without limitation any applicable state structured settlement protection statute.

"No claimant or Successor Payee shall have the power to affect any Transfer of Payment Rights except as provided in sub-paragraph (II) above."

due in 2020. Together, the sums had a discounted present value of just over $29,000. J. G. Wentworth agreed to pay Johnson $17,250 for the right to receive those sums in the future. In December 2013, Johnson signed an agreement for the transfer of the future payments to J. G. Wentworth. This litigation arises out of J. G. Wentworth's petition to obtain court approval of the transfer.

In Oregon, transactions like the one executed by J. G. Wentworth and Johnson for the transfer of structured settlement payment rights are subject to the provisions of ORS 33.850 to 33.875, which the legislature enacted in 2005 to implement 26 USC section 5891.[6] In February 2014, J. G. Wentworth filed a petition in Multnomah County Circuit Court seeking an order approving the transfer. As obligor under the QAA, Met Tower participated in the proceeding and objected to the transfer. After a hearing in which the trial court met with Johnson in chambers to discuss his need for the funds, the court issued an order and judgment approving of the transfer.

Met Tower now appeals from the judgment, raising several challenges. As relevant to our analysis, there are no factual disputes, and the questions presented are purely legal, involving issues of contract interpretation and statutory construction; accordingly, we review the trial court's decision for errors of law. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (questions of statutory construction reviewed for errors of law, first examining the text and context of the statute and any useful legislative history to determine the legislature's intent); *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997) (trial court's construction of a contract reviewed for errors of law).

ORS 33.855 describes payments subject to transfer under Oregon law and sets forth the procedural requirements for such a transfer. ORS 33.860 specifies the disclosures that

---

[6] Provisions similar to ORS 33.850 to 33.875 have been enacted in almost every state, and are commonly described as "structured settlement protection acts." *See* Hindert & Ulman, 44 No. 2 Judges' J at 20. A lump sum payment received by a beneficiary in exchange for transferring future payment rights, pursuant to a structured settlement protection act, retains its tax exempt status. 26 USC § 5891(d).

the transferee (in this case, J. G. Wentworth) must make to a structured settlement beneficiary (Johnson) who seeks to transfer the right to future payments. ORS 33.865 describes the findings that a court must make in its order approving a transfer.[7] On its face, the order entered by the trial court in this case complied with ORS 33.865, in that it included all of the required findings. However, Met Tower asserts on appeal that the trial court erred, because Met Tower is entitled to enforce the anti-assignment provision in the structured settlement agreement, thereby preventing Johnson from assigning his right to future payments.[8]

The structured settlement agreement in this case was executed and approved by a court in California, and it provides that its construction is subject to California law. Therefore, we address whether, under California law, the anti-assignment provision in the structured settlement agreement was enforceable by Met Tower. ORS 15.350 ("[t]he contractual rights and duties of the parties are governed by the law or laws that the parties have chosen"); *see M+W Zander v. Scott Co. of California*, 190 Or App 268, 78 P3d 118 (2003) (when parties specify their choice of law in a contract, that choice will be effectuated subject to limitations under the *Restatement (Second) of Conflicts of Laws* (1971)); *Pinela v. Neiman Marcus Group, Inc.*, 238 Cal App 4th 227, 251, 190 Cal Rptr 3rd 159 (2015) (contractual choice of law clauses are generally construed to designate the substantive law of the chosen jurisdiction as well as the interpretation of the agreement).

Under California law, although public policy strongly favors the free transferability of property, that policy must

---

[7] Under ORS 33.865, the court must find that (1) the transfer is in the best interests of the payee, taking into account the welfare and support of all persons for whom the payee is legally obligated to provide support; (2) the payee has been advised in writing to seek advice from an attorney, certified public accountant, actuary or other licensed professional adviser regarding the transfer, and the payee has either received the advice or knowingly the waived advice in writing; and (3) the transfer "does not contravene any applicable statute or order of any court[.]"

[8] Met Tower also challenges other aspects of the court's order, including its finding that the transfer is in Johnson's best interests, as required by ORS 33.865(1), and its conclusion that the transfer does not contravene any applicable statute, as required by ORS 33.865(3). In view of our conclusion relating to the anti-assignment clause, we do not reach those contentions.

be weighed against the right of parties to freely contract. *Parkinson v. Caldwell*, 126 Cal App 2d 548, 552, 272 P2d 934 (1954). Thus, although contractual clauses restricting assignment of interests are strictly construed, a clear prohibition against assignment of money due under a contract will be enforced, if not waived by the obligor. *Masterson v. Sine*, 68 Cal 2d 222, 230, 436 P2d 561 (1968) ("In the absence of a controlling statute the parties may provide that a contract right or duty is nontransferable."); *Parkinson*, 126 Cal App 2d at 552 ("Where [contract] language is clear, an agreement not to assign a debt is effective."); *see San Francisco Newspaper Printing Co. v. Superior Court*, 170 Cal App 3d 438, 442, 216 Cal Rptr 462 (1985) (an anti-assignment clause is not inherently suspect and is "routinely enforced"); *see also Johnson v. First Colony Life Ins. Co.*, 26 F Supp 2d 1227, 1229 (C.D. Cal 1998) (upholding anti-assignment clause in structured settlement agreement).[9]

Nonetheless, the California Court of Appeal has held that a contractual anti-assignment clause will not bar court-approved transfers of structured settlement rights, if no interested party objects to the transfer. *See 321 Henderson Receivables Origination LLC v. Sioteco*, 173 Cal App 4th 1059, 93 Cal Rptr 3d 321 (2009). *Sioteco* involved an anti-assignment clause in a structured settlement agreement, which, if enforced, would bar the transfer of structured settlement payments that otherwise met the requirements of the state's "Structured Settlement Transfer Act." 173 Cal App 4th at 1065, 1072-73. Although no party had objected to the proposed transfers of payments under the settlement agreement at issue in *Sioteco*, the trial court had nonetheless concluded that they were barred, in part because they violated the anti-assignment provision. *Id.* at 1072.

---

[9] Anti-assignment provisions are also generally enforceable in Oregon. *See, e.g., Holloway v. Republic Indemnity Co. of America*, 341 Or 642, 651-52, 147 P3d 329 (2006) (anti-assignment provision in insurance contract was not ambiguous and rendered invalid insured's assignment of payment rights under policy). In *Holloway*, the court said that an unambiguous anti-assignment clause in an insurance contract was enforceable against the insured. In that case, the insurance policy provided: "Your rights or duties under this policy may not be transferred without our written consent." 341 Or at 645. The court concluded that the clause was unambiguous and prohibited the insured's assignment of rights under the policy. *Id.* at 651.

In reversing the trial court, the Court of Appeal first noted its disagreement with the federal district court's holding in *Johnson*, 26 F Supp 2d at 1230, that a section of the California Commercial Code generally disapproving of contractual restrictions on assignments of intangible assets did not apply to the assignment or transfer of a structured settlement payment right. The *Sioteco* court concluded that the commercial-code provision did apply to such transfers, and it also observed that the California Structured Settlement Transfer Act favored court-approved transfers of structured settlement payments. 173 Cal App 4th at 1075. However, the court acknowledged that "it is possible that the annuity issuer or the settlement obligor might be able to enforce those anti-assignment provisions in certain situations." *Id.* Thus, the court did not hold that anti-assignment provisions are always ineffective in the structured-settlement context; instead, it held only that, "where no interested parties object to the transfer of structured settlement payment rights," the anti-assignment provision in the structured settlement agreement "do not bar" a court-approved transfer of structured settlement payments. *Id.* at 1076.

*Sioteco* is distinguishable from this case on its facts, but as the most recent California appellate decision addressing the effect of anti-assignment provisions in structured settlement agreements on the transfer of structured settlement payments, it, along with the other cases we have discussed, guides our reasoning. Here, as in *Sioteco*, the anti-assignment clause in the structured settlement agreement prohibits a transfer of the right to payments. But in this case, unlike in *Sioteco*, Met Tower, as State Farm's assignee and as the obligor under the structured settlement agreement, has objected to the transfer and seeks to enforce the anti-assignment provision. Under those circumstances, and based on our reading of *Sioteco* and California's case law regarding the general enforceability of anti-assignment clauses, we conclude that Met Tower was entitled to enforce the anti-assignment clause in the structured settlement agreement, barring the transfer.

In arguing to the contrary, J. G. Wentworth focuses on the provision in the QAA that explicitly permits a transfer of payments approved by a "qualified order." It argues

that, when the settlement agreement and that provision of the QAA are considered *together*, it shows that the parties contemplated the possibility that the beneficiary would seek to transfer future payments, and that Met Tower implicitly agreed to permit such a transfer, if approved in a qualified order. Met Tower responds that under the QAA, transfer is permitted only if it "otherwise complies with applicable state law." Met Tower contends that when, as here, applicable state law permits enforcement of an anti-assignment provision by the obligor, and the obligor seeks to enforce it, a transfer would not comply with state law.

We agree with J. G. Wentworth that the structured settlement agreement and the QAA must be construed together, because of their contemporaneous execution and related subject matters.[10] *Vertopoulos v. Siskiyou Silicates, Inc.*, 177 Or App 597, 602-603, 34 P3d 704 (2001) (under California law, several documents related to the same subject matter and as parts of substantially one transaction are to be construed together as one contract). The basic goal of contract construction under California law is to give effect to the parties' mutual intentions, *Bank of the West v. Superior Court*, 2 Cal 4th 1254, 1264, 833 P2d 545 (1992), as evidenced by the words of the contract, *Cedars-Sinai Medical Center v. Shewry*, 137 Cal App 4th 964, 980, 41 Cal Rptr 3d 48 (2006). In construing seemingly conflicting provisions, the goal, when possible, is to reconcile them so as to give effect to all the provisions. *See Epic Communications, Inc. v. Richwave Technology, Inc.*, 237 Cal App 4th 1342, 1352, 188 Cap Rptr 3d 844 (2015) (conflicting contract provisions must be reconciled, if possible, by such interpretation as will give some effect to the repugnant clauses). As explained below, we conclude that Met Tower's interpretation is more consistent with the goal of reconciling the two contract provisions.

First, the express terms of the settlement agreement prohibit a transfer of the beneficiary's interest in future payments, thereby creating an anti-assignment right belonging to the obligor. It is undisputed that, by the terms

---

[10] That conclusion is consistent with the pertinent Oregon statutes. For purposes of ORS 33.850 to 33.875, ORS 33.850(8) defines the "terms of the structured settlement agreement" to include the terms of the QAA.

of the QAA, Met Tower became the obligor under the structured settlement agreement, assuming all of State Farm's obligations. And, under California law, as the obligor under the structured settlement agreement, Met Tower is entitled to enforce the anti-assignment provision. *See Newspaper Printing Co.*, 170 Cal App 3d at 442 (an anti-assignment clause is not inherently suspect and is "routinely enforced").

Second, nothing in the QAA suggests that, by signing it, Met Tower somehow abandoned its right to enforce the anti-assignment clause in the settlement agreement, as J. G. Wentworth seems to suggest. Rather, the QAA simply describes the only set of conditions under which a transfer of the beneficiary's interest may occur *if* Met Tower chooses not to enforce the anti-assignment clause—that is, the transfer must be approved in advance by a court, pursuant to the pertinent Internal Revenue Code provisions, and must otherwise comply with state law. Thus, the QAA is consistent with the settlement agreement in that it reflects both Met Tower's explicit contractual right to enforce the anti-assignment provision and Met Tower's implicit right *not* to enforce that provision. *See Sioteco*, 173 Cal App 4th at 1075. Put differently, if Met Tower had not objected to Johnson transferring his right to receive structured settlement payments, then the QAA's requirements for compliance with state and federal law would have kicked in.

As noted, J. G. Wentworth attaches greater significance to the QAA's description of the conditions under which a transfer may occur, suggesting that, by signing the QAA, Met Tower must have agreed never to enforce the anti-assignment clause in the settlement agreement. That proposed interpretation of the contracts would not only read the anti-assignment clause out of the settlement agreement, but would read something close to a waiver into the QAA. That interpretation does not reconcile the provisions, but instead significantly changes both contracts. Such a result is not favored under California law. *See Pinela*, 238 Cal App 4th at 251 n 13 (avoiding construction that would render contract provision superfluous).

J. G. Wentworth makes a second argument, contending that Met Tower's decision to object to the transfer

in this case is arbitrary and that, in light of the provision in the QAA permitting a qualified transfer when approved by the court, the documents together must be construed to impose on Met Tower an implied duty of good faith and fair dealing to permit the transfer. But the duty of good faith and fair dealing does not require a party to take action that is inconsistent with the express terms of a contract. *Carma Developmers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal 4th 342, 371, 826 P2d 710 (1992) ("[A]s a general matter, implied terms should never be read to vary express terms.") *Tollefson v. Roman Catholic Bishop*, 219 Cal App 3d 843, 854, 268 Cal Rptr 550 (1990) (The implied duty of good faith and fair dealing is designed to effectuate the intentions and reasonable expectations of the parties reflected within their mutual promises within the contract but cannot be used to imply an obligation which would completely obliterate a right expressly provided by a written contract.) Having reconciled the conflicting contractual provisions so as to sustain the enforceability of the anti-assignment provision, we conclude that Met Tower did not have an implied duty of good faith and fair dealing to either waive or not object to the enforcement of that provision.

In view of our conclusion that Met Tower was entitled to enforce the anti-assignment clause preventing Johnson from transferring his interest in the future payments under the structured settlement agreement, we conclude that Met Tower's objection to the judgment is well-taken and that the trial court erred in approving the transfer. We therefore do not reach Met Tower's remaining contentions.

Reversed and remanded.