Argued and submitted April 10, reversed and remanded for entry of judgment
for plaintiff December 13, 2006

# MID-CENTURY INSURANCE COMPANY,
*Appellant,*

*v.*

# Elijah PERKINS,
*Respondent.*

04-1834-E7; A127522

149 P3d 265

Thomas M. Christ argued the cause for appellant. With him on the briefs were Thomas W. Brown and Cosgrave Vergeer Kester LLP.

Dennis Black argued the cause for respondent. On the briefs were Thomas N. Petersen and Black, Chapman, Webber, Stevens, Petersen & Lundblade.

Before Edmonds, Presiding Judge, and Armstrong* and Wollheim, Judges.

EDMONDS, P. J.

---

**EDMONDS, P. J.**

Plaintiff Mid-Century Insurance Company (Mid-Century) appeals after the trial court granted summary judgment to defendant Elijah Perkins in a declaratory judgment action concerning Perkins's entitlement to underinsured motorist benefits under his automobile insurance policy with Mid-Century. ORCP 47 C. The issue before us is whether Perkins was injured by an "underinsured" vehicle as defined under Oregon law. Perkins cross-assigns as error the trial court's ruling that the law of Oregon, rather than the law of Washington, determines the scope of his underinsurance benefits. We reverse and remand for entry of judgment in favor of Mid-Century.

## I. BACKGROUND

The relevant facts of this case are undisputed. In 1997, Mid-Century issued an automobile insurance policy to Perkins and his mother, both of whom were living in Oregon at the time. The policy was renewed every six months thereafter, through March 2002. The insurance policy included uninsured motorist (UM) coverage, defined in the policy as coverage for risk of injury caused by (a) a vehicle for which there is no insurance, (b) a hit-and-run vehicle, or (c) a phantom vehicle whose owner or operator has not been identified. The policy also included "underinsured motorist" (UIM) coverage for an accident caused by an underinsured vehicle, which the policy defined as "a motor vehicle that is insured for an amount less than the underinsured motorist limits." The limits set forth in the policy were $100,000 for "each person" and $300,000 for "each occurrence."

When the policy was first issued, it covered a 1979 Blazer. In 1999, the coverage was changed to a 1986 Toyota pickup. The Toyota was registered in Oregon, where Perkins lived. At some point thereafter, Perkins moved to Seattle, Washington; although he intended to register the Toyota in Washington, he never did so.

In October 2001, Perkins was injured in an automobile accident in Washington that was caused by Gretchen Elster. Elster had an automobile insurance policy with

$100,000 in liability coverage, and Perkins recovered the full limits of Elster's policy. Perkins then sought UIM benefits under his policy with Mid-Century, contending that his damages exceeded his recovery under Elster's policy. Mid-Century filed this declaratory judgment action to determine the rights and liabilities of the parties with respect to Perkins's policy. The issue is whether Mid-Century is obligated to pay underinsurance benefits to Perkins in light of the $100,000 limits in both Perkins's and Elster's policies.

Initially, the dispute between the parties concerns a choice of law issue. Perkins argues that Washington law governs his entitlement to UIM benefits and that, under Washington law, he is entitled to UIM coverage as long as his damages exceed Elster's liability limits. Rev Code Wash 48.22.030(1). Mid-Century contends that Oregon law applies and that, under Oregon law, coverage is available only when the insured's UIM policy limits exceed the tortfeasor's liability limits—that is, Oregon law involves a "limits-to-limits" comparison. Both parties moved for summary judgment on the choice of law issue.

The trial court ruled that the matter of UIM coverage was governed by Oregon law and that, because Elster was insured for the same amount as Perkins, Mid-Century was entitled to judgment as a matter of law. On November 16, 2004, the trial court issued an opinion and order to that effect.

On December 7, 2004, Perkins filed a motion asking the court to reconsider its ruling in light of *Bergmann v. Hutton*, 337 Or 596, 101 P3d 353 (2004), decided by the Supreme Court on December 2, 2004. On reconsideration, the trial court concluded that *Bergmann* was indeed controlling:

> "The Supreme Court's analysis and interpretation of under-insured motorist coverage sets forth that it is determined by the damages suffered by the insured, not by the limits of the policy. Thus, in order that this policy not be less favorable to the insured than the provisions required by ORS 742.504, the determination of whether a vehicle is under-insured must start with a determination of the total damages the insured would be entitled to recover from the other

driver, and a comparison of those damages to the policy limits. * * *

"Thus, this court finds that the ruling in [*Bergmann*] affects the legal analysis of the issue raised by the parties in their original motions for summary judgment. * * * The court therefore finds that, should defendant Perkins' damages exceed $100,000 (the amounts paid by the other driver), the policy taken out by defendant Perkins with plaintiff Mid-Century Insurance would require further underinsured coverage, up to the underinsured motorist policy limits of $100,000.00."

The trial court set aside its earlier order—with the exception of the ruling that Oregon law applies to the policy—and granted summary judgment to Perkins. Mid-Century appeals.

## II. ANALYSIS

A. *Applicable law*

Because it is potentially dispositive, we first consider Perkins's cross-assignment of error regarding the trial court's ruling that Oregon law governs his entitlement to UIM benefits. We review the trial court's interpretation of the terms of the parties' insurance policy and the applicable statutes for errors of law. *Holloway v. Republic Indemnity Co. of America,* 341 Or 642, 649, 147 P3d 329 (2006); *see also Mutual of Enumclaw Ins. Co. v. Payne,* 164 Or App 664, 667, 993 P2d 186 (1999).

Oregon law generally favors giving effect to the parties' choice of law. *M+W Zander v. Scott Co. of California,* 190 Or App 268, 272, 78 P3d 118 (2003). According to Perkins, the policy itself manifests the parties' intent to be governed by the "law of the state of the occurrence," in this case, Washington, with respect to the entitlement to uninsured/underinsured motorist benefits. Specifically, Perkins relies on the following section of the policy, which appears under **"PART II - UNINSURED MOTORIST"**:

**"Limits of Liability**

"The limits of liability shown in the Declarations apply subject to the following:

"1. The limit for 'each person' is the maximum for **bodily injury** sustained by any person in any one **occurrence**. Any claim for loss of consortium or injury to the relationship arising from this injury shall be included in this limit.

"If the financial responsibility law of the place of the **accident** treats the loss of consortium as a separate claim, financial responsibility limits will be furnished.

"2. Subject to the limit for 'each person,' the limit for 'each **occurrence**' is the maximum combined amount for **bodily injury** sustained by two or more persons in any one **occurrence**.

"3. *Subject to the law of the **state** of the **occurrence**, we will pay no more than these maximums regardless of the number of vehicles insured, **insured persons**, claims, claimants, policies, or vehicles involved in the **occurrence**.*

"4. Any amount payable by us to or for an **injured person** under this coverage shall be reduced by:

"a. the amount payable to an **insured person** under Coverage A - **Bodily Injury**;

"b. all amounts paid by or for the owner or operator of an **uninsured** or **underinsured motor vehicle** and any other person or organization who may be held legally liable for **bodily injury** to an **insured person**; and

"c. the amount paid and the present value of all amounts payable on account of **bodily injury** under any workers' compensation law, disability benefits law or any similar law.

"5. The amount of underinsured motorist coverage we will pay shall be reduced by the amount of any other **bodily injury** coverage available to any person or entity liable for the **accident**."

(Boldface in original; emphasis added.)

■  Perkins contends that the third paragraph of the above section "clearly states that UIM benefits are to be paid according to the law of the state of the occurrence." We disagree. The language of an insurance policy must be interpreted in the context of the entire agreement. *Holloway*, 341 Or at 650. The language on which Perkins relies is not a

choice of law provision that governs the entire policy; rather, it addresses a particular issue that arises in situations involving multiple claimants. An "occurrence" under the policy may involve multiple vehicles and/or multiple persons injured, or there may exist multiple occurrences that contribute to an injury. Paragraph 1 limits liability under the policy to bodily injuries sustained by any person arising out of "any one occurrence." Paragraph 2 establishes the policy limits for an occurrence when there are multiple persons who are injured. Read in context with paragraphs 1 and 2, paragraph 3 provides that Mid-Century will not pay more than "these maximums" (that is, the maximums stated in paragraphs 1 and 2), regardless of how many vehicles insured, insured persons, claims, claimants, policies, or vehicles are involved in any one occurrence. However, the limits imposed by the policy in that regard are subject to the law of the state of the occurrence. This case does not involve a question about policy limits that turns on the number of occurrences, vehicles, or injured persons. Rather, the issue here is whether defendant is entitled to UIM benefits when his UM/UIM policy limits are identical to the tortfeasor's policy limits.

■    The parties do not refer us to any other provision in the policy that persuades us that they have agreed on the applicable law for interpreting the policy. In the absence of an effective election by the parties, conflict of law principles dictate that Oregon law applies to the interpretation of the policy. In *Davis v. State Farm Mut. Ins.*, 264 Or 547, 507 P2d 9 (1973), the court concluded that Michigan law governed the plaintiff's entitlement to uninsured motorist coverage benefits despite the fact that the accident occurred in Oregon. The court concluded:

> "[T]his case is an action upon a contract. The contract was entered into in Michigan under the authority of a Michigan statute and was issued to Michigan residents. The place of plaintiff's injury was fortuitous. Under such a set of facts, Michigan law applies. *See* Restatement (Second) Conflict of Laws §§ 188, 204(b); *Grayson v. National Fire Insurance Company*, 313 F Supp 1002, 1007 (D Puerto Rico 1970)."

264 Or at 549. There is no dispute in this case that Perkins's policy was issued in Oregon by an insurer doing business in Oregon. Moreover, at the time that the policy was issued,

Perkins and his mother were Oregon residents; his mother remained an Oregon resident at the time of the accident, and the vehicle was registered in Oregon. Thus, the policy in effect at the time of the accident was entered into in Oregon under the authority of an Oregon statute and was renewed to at least one Oregon resident for an Oregon-registered vehicle. Under the circumstances, Oregon has the more significant relationship to the insurance policy. The fact that Perkins moved to Washington and intended to register the vehicle in that state (but never did) does not alter the fact that the principal contacts resulting in the parties' contractual relationship arose in Oregon. *See Restatement (Second) Conflict of Laws* §§ 6, 188, 193 (1971). The trial court correctly concluded that Perkins's entitlement to UIM benefits under the policy is governed by Oregon law.

B. *Availability of UIM benefits under Oregon law*

■ We turn then to Mid-Century's argument that Perkins is not entitled to UIM benefits because his injuries were not caused by an "underinsured" motorist as defined by Oregon statute. Perkins concedes that, as the term "underinsured motorist" is defined in his policy, his injuries were not caused by an underinsured motorist. He argues, however, that the definition in his policy is inconsistent with the requirements of ORS 742.502 and ORS 742.504[1] and is therefore superseded by those statutes. *See* ORS 742.504 ("Every policy required to provide the coverage specified in ORS 742.502 shall provide uninsured motorist coverage which in each instance is no less favorable in any respect to the

---

[1] Unless otherwise noted, all citations to ORS chapter 742 are to the 2001 versions of the statutory provisions. In 2005, substantive changes were made to ORS 742.502 that bear on the issues in this case. Or Laws 2005, ch 235, § 1. The legislature added a new subsection to ORS 742.502 that provides:

"Uninsured motorist coverage and underinsurance coverage shall provide coverage for bodily injury or death when:

"(a) The limits for underinsurance coverage of the insured equal the limits of the liability policy of the person whose fault caused the bodily injury or death; and

"(b) The amount of liability insurance recovered is less than the limits for uninsured motorist coverage of the insured."

Or Laws 2005, ch 235, § 1. Those changes, however, apply only to policies issued or renewed on or after January 1, 2006, the effective date of the amendments, and therefore do not affect our analysis. Or Laws 2005, ch 235, § 2.

insured or the beneficiary than if the following provisions were set forth in the policy * * *."); ORS 742.502(4) ("Under-insurance coverage shall be subject to ORS 742.504 and 742.542."). Thus, our focus is on the meaning of the term "underinsurance" as used in ORS 742.502.[2]

On appeal, Mid-Century reprises its argument that "underinsurance coverage" requires, as a predicate, an "underinsured motorist"—that is, a motorist whose policy limits are *under* the policy limits of the insured; here, of course, that predicate does not exist. Perkins, in turn, relies on *Bergmann* for the proposition that whether Elster is "underinsured" does not depend on a comparison of his policy limits and Elster's policy limits. Rather, Perkins argues, whether a motorist is "underinsured" for purposes of ORS 742.502 depends on whether the insured is made whole by the tortfeasor's coverage; if the insured's *damages* exceed the insured's recovery from the tortfeasor, it follows that the tort-feasor is "underinsured" and that he, the insured, is entitled to UIM benefits, up to the limits of his policy with Mid-Century, in addition to any amounts he recovered from Elster's policy.

To put the parties' dispute in context, it is helpful to understand the evolution of uninsured and underinsured motorist coverage under Oregon law. All drivers in Oregon must carry insurance in at least the amounts provided in ORS 806.070, the financial responsibility law, to cover claims against them for bodily injury or death. Presently, those limits are $25,000 for bodily injury to or for the death of one person, and $50,000 for bodily injury to or for the death of more than one person arising out of a single accident. ORS 806.070(2).

Since 1967, Oregon law has mandated that all motor vehicle liability policies include "uninsured motorist coverage." Or Laws 1967, ch 482. ORS 742.500(1) defines the term "uninsured motorist coverage" as

---

[2] Our analysis focuses on ORS 742.502 rather than ORS 742.504. Although underinsurance coverage is subject to ORS 742.504, the provisions of ORS 742.504 presume the existence of an "underinsured" motorist within the meaning of ORS 742.502. Thus, the threshold inquiry occurs under ORS 742.502.

"coverage within the terms and conditions specified in ORS 742.504 insuring the insured * * * for all sums which the insured * * * shall be legally entitled to recover as damages for bodily injury or death caused by accident and arising out of the ownership, maintenance or use of an uninsured motor vehicle in amounts or limits not less than the amounts or limits prescribed for bodily injury or death under ORS 806.070."

ORS 742.504 sets forth the required policy provisions for uninsured motorist coverage. Among other things, it provides:

"The insurer will pay all sums which the insured, the heirs or the legal representative of the insured shall be legally entitled to recover as general and special damages from the owner or operator of an uninsured vehicle because of bodily injury sustained by the insured caused by accident and arising out of the ownership, maintenance or use of such uninsured vehicle. * * *"

ORS 742.504(1)(a). ORS 742.504(2)(d), in turn, defines an "uninsured vehicle" as, among other things, "[a] vehicle with respect to the ownership, maintenance or use of which there is no collectible automobile bodily injury liability insurance or bond, in at least the amounts or limits prescribed for bodily injury or death under ORS 806.070 applicable at the time of the accident * * *."

The requirements for "underinsured motorist coverage" were added to the statutory scheme in 1981, in an effort to correct what appeared to be a gap in the statutes. When the motor vehicle statutes were amended to include "uninsured motorist coverage" in 1967, they created an anomaly: the insured who was injured by an uninsured motorist could recover more insurance proceeds than an insured who was injured by a motorist whose policy limits met or exceeded the minimum required by the financial responsibility law. The concept of "underinsured motorist coverage," introduced in 1981 in Senate Bill (SB) 31, was designed to address that very problem. Tape Recording, House Floor Debate, SB 31, July 20, 1981, Tape 31, Track I (statement of Sen Bill Bradbury) (stating that, under the existing law, if a person carries high uninsured motorist coverage, he or she is better

off being injured by someone who is uninsured); Senate Committee on Insurance and Banking, SB 31, Jan 23, 1981, Tape 5, Side A (statement of Frank Howatt, representative of the Insurance Commissioner) (suggesting that the failure to provide for underinsurance coverage in the motor vehicle statutes was simply a legislative oversight).

Unlike "uninsured motorist coverage," the term "underinsured motorist coverage" was not separately defined in ORS 742.500. Instead, a description of the circumstances giving rise to "underinsured motorist coverage" was grafted onto the existing UM statutory scheme to provide that

> "[o]ffers of uninsured motorist coverage larger than the amounts required by [Oregon's financial responsibility law] shall include underinsurance coverage for damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less than the insured's uninsured motorist coverage. Underinsurance benefits shall be equal to uninsured motorist coverage benefits less the amount recovered from other automobile liability insurance policies."

Or Laws 1981, ch 586, § 1.

Eventually, through a series of legislative amendments, the description of the circumstances giving rise to underinsured motorist coverage in ORS 742.502 appeared in two separate subsections, ORS 742.502(2)(a) and ORS 742.502(3). ORS 742.502(2)(a) (1995) provided:

> "A motor vehicle bodily injury liability policy shall have the same limits for uninsured motorist coverage as for bodily injury liability coverage unless a named insured in writing elects lower limits. The insured may not elect limits lower than the amounts prescribed to meet the requirements of ORS 806.070 for bodily injury or death. *Uninsured motorist coverage larger than the amounts required by ORS 806.070 shall include underinsurance coverage for damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less than the insured's uninsured motorist coverage.* Underinsurance benefits shall be equal to uninsured motorist coverage benefits less the amount

recovered from other automobile liability insurance policies."

(Emphasis added.) ORS 742.502(3) (1995) provided:

> "The insurer issuing such policy may offer one or more options of uninsured motorist coverage larger than the amounts prescribed to meet the requirements of ORS 806.070 and in excess of the limits provided under the policy for motor vehicle bodily injury liability insurance. *Offers of uninsured motorist coverage larger than the amounts required by ORS 806.070 shall include underinsurance coverage for damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less than the insured's uninsured motorist coverage.* Underinsurance benefits shall be equal to uninsured motorist coverage benefits less the amount recovered from other automobile liability insurance policies."

(Emphasis added.)

In 1997, however, the description of the circumstances giving rise to underinsured motorist coverage in ORS 742.502(2)(a) and ORS 742.502(3) diverged. The description in ORS 742.502(3) was amended as follows:

> "Offers of uninsured motorist coverage larger than the amounts required by ORS 806.070 shall include underinsurance coverage for damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle [*that is insured for*] **with liability insurance that provides recovery in** an amount that is less than the insured's uninsured motorist coverage. Underinsurance benefits shall be equal to uninsured motorist coverage benefits less the amount recovered from other automobile liability insurance policies."

Or Laws 1997, ch 808, § 1 (new language in boldface; language in italics and brackets deleted). ORS 742.502(2)(a) was not similarly amended in 1997.

Thus, at the time that Perkins's policy with Mid-Century was renewed in 2001, the circumstances giving rise to underinsured motorist coverage were described differently in two subsections of ORS 742.502, creating some tension in the statutory scheme. While ORS 742.502(2)(a) continued to

describe under-insured motorist coverage with respect to the amount that the tortfeasor is "insured for," the description of the circumstances giving rise to underinsured motorist coverage was amended in ORS 742.502(3) to describe underinsured motorist coverage based on whether the tortfeasor's liability insurance "provides recovery in an amount that is less than the insured's uninsured motorist coverage." *See Takano v. Farmers Ins. Co.*, 184 Or App 479, 484-85, 56 P3d 491 (2002), *rev den*, 335 Or 195 (2003) (describing the tension in the provisions of ORS 742.502 after the 1997 amendments). However, the phrase "less than the insured's uninsured motorist coverage" still appeared in both subsections after the 1997 amendments and was in effect in 2001 when Perkins's policy was renewed.

Before the statutory scheme was amended in 1997, this court held that the provisions of ORS 742.502 described "underinsured coverage" in terms of a comparison of policy limits, albeit without significant discussion. In *Lunsford v. Farmers Ins. Co.*, 118 Or App 308, 846 P2d 1206, *rev den*, 317 Or 162 (1993), we determined that *former* ORS 743.789(2),[3] *renumbered as* ORS 742.502(2) (1989), required an insurer to pay underinsurance coverage benefits only if the insured's UM/UIM policy limits exceeded the tortfeasor's policy limits. We held in a per curiam opinion:

> "The sole issue is whether *former* ORS 743.789(2) * * * requires defendant to pay 'underinsurance coverage' on plaintiff's claim. It does not. Under the statute, defendant is required to provide underinsurance coverage only if plaintiff's coverage exceeded [the tortfeasor's] liability coverage at the time of the accident. Plaintiff acknowledges that her coverage limits were identical to [the tortfeasor's]."

118 Or App at 309. We adhered to that understanding of UIM coverage in subsequent cases. *See, e.g., Fox v. Country Mut. Ins. Co.*, 169 Or App 54, 68, 7 P3d 677 (2000), *rev den*, 332 Or 137 (2001) (relying on *Lunsford* and concluding that,

---

[3] *Former* ORS 743.789(2) provided, in part:

"Offers of uninsured motorist coverage larger than the amounts required by ORS 806.070 shall include underinsurance coverage for damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less than the insured's uninsured motorist coverage."

"[b]ecause [the tortfeasor's] liability policy and [the insured's] UM policy had the same limits, the [tortfeasor's] vehicle was not 'underinsured' ").

In *Takano,* we applied the 1997 amendments to ORS 742.502 in the context of multiple claimants. We recognized that, for purposes of determining whether an underinsured circumstance exists, the 1997 amendments express the legislature's intent to look to the amount that a claimant could *recover* from a tortfeasor's policy limits. Thus, in the multiple claimant context, the comparison to be made under the statute after the 1997 amendments is between a particular insured's recovery from the tortfeasor's policy and the UM/UIM limits in the insured's policy to determine whether the tortfeasor is underinsured. 184 Or App at 485. This case, however, presents a different issue from the issue we decided in *Takano.* Here, Perkins recovered an amount from Elster's policy that is identical to his policy limit for UM/UIM coverage. He contends, nonetheless, that whether Elster was underinsured is determined not by the amount of his recovery from Elster's policy but by whether his *damages* exceed Elster's policy limits.

We now turn to the Supreme Court's holding in *Bergmann,* which forms the basis for Perkins's arguments. In *Bergmann,* the issue was whether Farmers Insurance Company could offset the amount that an injured motorist received in workers' compensation benefits against the amount that Farmers otherwise would have been obligated to pay to the insured under the insured's UIM coverage in her policy. The dispute in *Bergmann* centered around ORS 742.504(7) and not ORS 742.502, the statute at issue in this case. ORS 742.504(7) provides:

> "(a) The limit of liability stated in the declarations as applicable to 'each person' is the limit of the insurer's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the declarations as applicable to 'each accident' is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident.

"\* \* \* \* \*

"(c)    *Any amount payable under the terms of this coverage* because of bodily injury sustained in an accident by a person who is an insured under this coverage *shall be reduced by*:

"(A)    All sums paid on account of such bodily injury by or on behalf of the owner or operator of the uninsured vehicle and by or on behalf of any other person or organization jointly or severally liable together with such owner or operator for such bodily injury including all sums paid under the bodily injury liability coverage of the policy; and

"(B)    The amount paid and the present value of all amounts payable on account of such bodily injury under any workers' compensation law, disability benefits law or any similar law."

(Emphasis added.)

Essentially, the parties in *Bergmann* disputed the meaning of the phrase "any amount payable under the terms of this coverage" in ORS 742.504(7)(c). The insured argued that the phrase referred to the total amount that she could recover from a tortfeasor, in other words, her *damages*. Farmers argued that the phrase referred to the insured's policy limits. To resolve the dispute, the court focused on the text of the statute, read in context with other related statutory provisions. The phrase "this coverage" in paragraph (7)(c), the court concluded, "clearly is a general reference to UM coverage, which is the express subject of ORS 742.504." *Bergmann*, 337 Or at 604. "That is apparent," the court reasoned, "because ORS 742.504 begins with the preamble, '[e]very policy required to provide *the coverage specified in ORS 742.502* shall provide uninsured motorist coverage \* \* \*.' " *Id.* (emphasis in *Bergmann*). The court further observed that such a reading is supported by ORS 742.502, which provides that " '[e]very motor vehicle liability policy \* \* \* shall provide therein or by indorsement thereon uninsured motorist coverage \* \* \*.' " *Id.* (quoting ORS 742.502(1)). "Moreover," the court stated, "by virtue of ORS 742.502(4), which provides that '[u]nderinsurance coverage shall be subject to ORS 742.504,' the phrase 'this coverage' in ORS

742.504(7)(c) also is a reference, in the appropriate case, to UIM coverage." *Id.*

The court then distinguished the meaning of the term "coverage" in those statutes from the meaning of the term "policy." "Coverage," the court explained, "is a broad term; it is the universe of people, vehicles, and events that trigger the insurer's obligation to pay under the policy." *Id.* In contrast, a "policy," in the court's view, "is the specific contract between the insurer and the insured, which, by statute, is required to include certain terms. * * * The terms of a *policy* include limits on the insurer's liability; the terms of the *coverage* do not." *Id.* (emphasis in original).

The court then observed that the phrase in ORS 742.504(7)(c) " '*any amount payable* under the terms of this coverage *because of bodily injury sustained in an accident* by a person who is insured under this coverage' tracks the wording of ORS 742.504(1)(a), which defines the insurer's liability for UM '*coverage.*' " *Id.* at 605 (emphasis in *Bergmann*). Based on the above reasoning, the court concluded:

> "Thus, the amount that is 'payable' by the insurer under the 'coverage' is 'all sums' that the insured is 'legally entitled to recover' as a result of an accident with an uninsured motorist. In the usual case, that amount would be equal to the insured's total damages, although there may be cases in which the insured would not be 'legally entitled to recover' all of his or her damages, such as when the tortfeasor is immune from liability or when there has been a determination of comparative fault."

*Id.*

Although the analysis in *Bergmann* included the construction of both ORS 742.502(4) and ORS 742.504, it did not directly address the issue before us in this case, specifically, what it means to be "underinsured." In *Bergmann*, whether the insured was injured by an "underinsured" motorist was not an issue; the insured in that case had a policy limit of $100,000, and the other driver had a policy limit of $25,000. Thus, the question in *Bergmann* was not whether the insured was *entitled* to underinsurance benefits, but rather, whether the insurer could *offset* certain payments

when calculating those benefits. We acknowledge, however, that the court's discussion of the term "coverage" in *Bergmann* calls into question the meaning of ORS 742.502(2)(a), which expressly provides that "[u]ninsured motorist *coverage* shall include underinsurance *coverage* * * * arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less than the insured's uninsured motorist *coverage*." (Emphasis added.)

Because the issue before us is solely a question of statutory construction, we are required to discern the legislature's intent. We therefore use the methodology set forth in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and begin by analyzing the text of the statute in context, and, if necessary, resort to legislative history and maxims of statutory construction. In this instance, the legislature has undertaken to define the circumstances giving rise to "underinsurance coverage" in ORS 742.502(2)(a) and (3). Consequently, our analysis focuses on the language of ORS 742.502(2)(a) and centers on the meaning of the phrase "an amount that is less than the insured's uninsured motorist coverage," language that was not changed by the 1997 amendments to ORS 742.502(3) and that appears in both ORS 742.502(2)(a) and ORS 742.502(3). We observe also that the language "with liability insurance that provides recovery" in ORS 742.502(3) has no import in this case involving a single claimant because Perkins recovered the full amount of Elster's policy limits. Thus, whether the amount of Elster's policy limits or the amount recovered by Perkins on Elster's policy is used for purposes of comparison, the result is the same. Our holding in this case, therefore, is not intended to resolve any potential tension that may exist between other language in ORS 742.502(2)(a) and ORS 742.502(3). Based on the analysis that follows, we conclude that the meaning of the language in dispute is unambiguous, and we therefore need not inquire beyond the text and context of that language.

We turn first to the text of ORS 742.502(2)(a). For ease of reference, and because the other sentences of ORS 742.502(2)(a) provide meaningful context for our analysis, we again set out the entire provision in full and identify the sentences sequentially:

"[1] A motor vehicle bodily injury liability policy shall have the same limits for uninsured motorist coverage as for bodily injury liability coverage unless a named insured in writing elects lower limits. [2] The insured may not elect limits lower than the amounts prescribed to meet the requirements of ORS 806.070 for bodily injury or death. ▮ Uninsured motorist coverage larger than the amounts required by ORS 806.070 shall include underinsurance coverage for damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less than the insured's uninsured motorist coverage. [4] Underinsurance benefits shall be equal to uninsured motorist coverage benefits less the amount recovered from other automobile liability insurance policies."

The first sentence of ORS 742.502(2)(a) refers specifically to policy limits. It requires that each motor vehicle liability policy contain the same "limits" for "uninsured motorist coverage" as for "bodily injury liability coverage," unless the insured elects in writing to have lower limits. The second sentence places a restriction on the election permitted in the first sentence: although the insured may elect lower policy limits for uninsured motorist coverage, the limits cannot fall below the requirements of the financial responsibility law, ORS 806.070. The third sentence, which we discuss in greater detail below, defines the circumstances giving rise to underinsured motorist coverage, coverage that must be provided when the insured's uninsured motorist policy limits exceed the requirements of the financial responsibility law. Finally, the fourth sentence of ORS 742.502(2)(a) provides the formula for calculating the amount of "underinsurance benefits" in light of recovery from other policies.

With that context in mind, we turn to the text of the third sentence. To further facilitate our analysis of the text of the third sentence of ORS 742.502(2)(a), we will break that sentence into smaller, more manageable parts. The sentence begins with the phrase "[u]ninsured motorist coverage larger than the amounts required by ORS 806.070." The term "uninsured motorist coverage" is defined in ORS 742.500(1) as

"coverage within the terms and conditions specified in ORS 742.504 insuring the insured * * * for all sums which the

insured * * * shall be legally entitled to recover as damages for bodily injury or death caused by accident and arising out of the ownership, maintenance or use of an uninsured motor vehicle in amounts or limits not less than the amounts or limits prescribed for bodily injury or death under ORS 806.070."

The only "limits" described in that definition are the statutory limitations set forth in ORS 806.070. *See Bergmann*, 337 Or at 604 ("[T]he only 'limits' for coverage set out in the statutes pertaining to motor vehicle insurance are *minimum* limits required to meet the financial responsibility laws.") (Emphasis in original.).

The phrase "amounts required by ORS 806.070" refers to specific dollar amounts set forth in the financial responsibility law. Under ORS 806.070(1)(a), "[a]n insurance policy described under ORS 806.080 must provide for payment of at least amounts necessary to cover the minimum required payments under this section to qualify for use for financial responsibility under ORS 806.060." Specifically, the amount of coverage required by ORS 806.070 is

"(a)   $25,000 because of bodily injury to or death of one person in any one accident;

"(b)   Subject to that limit for one person, $50,000 because of bodily injury to or death of two or more persons in any one accident; and

"(c)   $10,000 because of injury to or destruction of the property of others in any one accident."

ORS 806.070(2).

Thus, when the phrase "[u]ninsured motorist coverage larger than the amounts required by ORS 806.070" in the third sentence of ORS 742.502(2)(a) is understood in context, it refers to insurance policies with limits that exceed the statutory limits required by ORS 806.070. That conclusion is also consistent with the Supreme Court's statement in *Bergmann* that the term "coverage," when used in isolation, is not synonymous with the term "policy." 337 Or at 604. Rather, the word "coverage," by itself, is a broad term that refers to the "universe of people, vehicles, and events that trigger the insurer's obligation to pay under the policy." *Bergmann*, 337

Or at 604. In *Bergmann*, however, the court did not view the word "coverage" in isolation. It construed the word "coverage" in connection with the phrase around it—"any amount payable under the terms of this coverage because of bodily injury sustained in an accident by a person who is insured under this coverage." 337 Or at 605. Our analysis, like the analysis in *Bergmann*, examines the meaning of the term "coverage" in the context of the words around it in ORS 742.502(2)(a). The term "uninsured motorist coverage" is used in conjunction with the phrase "larger than the amounts required by ORS 806.070." Because we are required to give effect to all words in the statute, ORS 174.010, the entire phrase necessarily refers to a policy that has limits greater than the minimum policy limits required by the financial responsibility law.

The third sentence continues by stating that, where the insured's policy limits exceed the statutory limits, the uninsured motorist coverage "shall include underinsurance coverage for damages or death caused by accident * * *." That part of the sentence establishes the mandatory nature of underinsurance coverage and ties the coverage to damages or death caused by accident.

The final and critical part of the third sentence of ORS 742.502(2)(a) provides that, where the insured's policy limits exceed the statutory limits, the insured's underinsurance motorist coverage shall include coverage for damages or death caused by accident "arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less than the insured's uninsured motorist coverage." That is, the final part of the third sentence defines the circumstances that involve an "underinsured" vehicle. Pursuant to that phrase, an "underinsured" vehicle is a "motor vehicle that is *insured for an amount that is less than the insured's uninsured motorist coverage*." ORS 742.502(2)(a) (emphasis added).

Although the legislature has defined the circumstances involving an "underinsured" vehicle, it has done so, in part, by the use of commonly used words. Our task therefore is to afford those words their ordinary meaning in order to discern the legislature's intent. The phrase "insured for an

amount," in context, necessarily refers to the tortfeasor's particular policy limits. The word "amount" means "1 a : the total number or quantity : AGGREGATE ‹ the ~ of the fine is doubled › : SUM, NUMBER ‹ add the same ~ to each column › ‹ *the ~ of the policy is 10,000 dollars* ›[.]" *Webster's Third New Int'l Dictionary* 72 (unabridged ed 2002) (emphasis added). The total amount or sum for which a person is "insured" can only be ascertained by reference to the limits of that person's policy.[4]

That brings us to the text that is at the center of the parties' dispute. Under the language of the statute, a tortfeasor is "underinsured" if the tortfeasor's policy limits are less than "the insured's uninsured motorist coverage." Once again, *Bergmann* teaches us that the phrase "uninsured motorist coverage," as defined in ORS 742.500(1), does not have the same meaning as the word "policy." However, the phrase "uninsured motorist coverage" in ORS 742.502(2)(a), unlike in the statute at issue in *Bergmann*, is qualified at the end of the third sentence of ORS 742.502(2)(a), this time, by the phrase *"the insured's."* By referring to the amount of *"the insured's* uninsured motorist coverage," the statute refers to the amount of *the insured's* coverage in his or her particular policy, and not to statutorily mandated coverage, as was the case in the statute at issue in *Bergmann*.[5] Moreover, when

---

[4] As discussed earlier, 209 Or App at 624, the "insured for an amount" language was changed by the 1997 amendments to ORS 742.502(3). However, it is clear from the context of those amendments that the legislature intended only to change the "limits-to-limits" analysis under the statute to a "limits-to-*recovery*" analysis. In fact, one of the drafters of the bill explained the "limits-to-limits" analysis to determine whether a driver is "underinsured," and identified the problem that occurred when the tortfeasor injured multiple claimants. Although the tortfeasor may have carried the same policy limits as each of the claimants (and was therefore not "underinsured" under the statute), the tortfeasor's policy limits would be divided among the claimants, thereby rendering the tortfeasor underinsured as a practical matter. Tape Recording, Senate Business, Law and Government Committee, SB 645, Apr 3, 1997, Tape 132, Side B (testimony of Joel Devore). By amending the statute to refer to the amount that could be recovered under the tortfeasor's policy—rather than the amount for which the tortfeasor is "insured"—the legislature remedied the coverage problem for "multiple-claimants in [the] matching-limits situation." Testimony, Senate Business, Law and Government Committee, SB 645, May 8, 1997, Exhibit K (statement of Joel Devore).

[5] The Supreme Court's discussion of the term "this coverage" in *Bergmann* is illustrative:

"We observe at the outset that Farmers unintentionally (but pivotally) muddies the waters by referring to the 'terms of *her* coverage' and equating

read in context with the first and second sentences of ORS 742.502(2)(a)—both of which contemplate "limits" on "uninsured motorist coverage" as stated in the policy—it is clear that the "amount" of the "insured's uninsured motorist coverage" refers to the amount or limits of the insured's particular policy.[6]

■     In summary, the word "coverage," when used in isolation, is a broad term that refers to the universe of people, vehicles, and events that trigger the insurer's obligation to pay under the policy. 337 Or at 604. However, under the methodology in *Bergmann*, the word "coverage" must be read in context with the words surrounding it. The word "coverage" appears three times in the third sentence of ORS 742.502(2)(a). In the initial phrase in that sentence, the word, used twice, mandates that uninsured motorist policies with limits that exceed the minimum statutory requirements for uninsured motorist coverage also include underinsurance coverage. And in the third use of the word in the sentence, the word "coverage" is qualified to refer specifically to the "*insured's* uninsured motorist coverage." In addition, the first sentence of ORS 742.502(2)(a) refers specifically to the "limits for uninsured motorist coverage." In context, then, the amount of the "insured's uninsured motorist coverage"— which is compared to the "amount" for which the tortfeasor is insured—refers to the limits of an insured's particular UIM/ UM policy.

Thus, we conclude, based on an examination of the text and context of ORS 742.502(2)(a), that the phrase "amount that is less than the insured's uninsured motorist

---

that concept to the terms of plaintiff's *policy*. That is, by referring to '*her*' (plaintiff's) coverage, Farmers conflates the contract that it and plaintiff entered into, *i.e.*, the policy, with the statutory reference to 'terms of *this* coverage.' (Emphasis added.) 'This coverage' in ORS 742.504(7)(c) is UM/UIM coverage as defined in the motor vehicle liability statutes, and that coverage does not contain a maximum limit on liability."

*Id.* at 606. The statutory language in this case, unlike the language at issue in *Bergmann*, refers not to the general statutory coverage but rather to the *insured's* uninsured motorist coverage.

[6] In any event, the court in *Bergmann* did not equate the term "coverage" with the term "damages," which is essentially what Perkins asks us to do. Rather, the court concluded that the phrase "amount payable under the terms of this coverage" would refer, in the usual case, to the insured's damages. 337 Or at 605. ORS 742.502(2)(a) does not contain similar language.

coverage," in this context, does in fact refer to an insured's policy limits. The definition of an underinsured vehicle in Perkins's policy is therefore consistent with the statute, and it follows that ORS 742.502(2)(a) requires a comparison of the amount of Elster's policy and the amount of Perkins's policy. If the amount of Elster's policy is "an amount that is less than" Perkins's policy, Elster is "underinsured" within the meaning of the statute and Perkins's policy, and Perkins is entitled to UIM benefits.[7]

Finally, we address Perkins's argument that the above construction of ORS 742.502 is inconsistent with certain *dicta* in *Bergmann*. In rejecting one of Farmers's arguments, the *Bergmann* court stated with reference to ORS 742.502(2)(a):

"Apparently, Farmers thinks that an interpretation that permits the amount that an insured receives from an uninsured tortfeasor to be offset against the total amount of damages that the insured would be entitled to recover on account of his or her injuries would vitiate other provisions of the statute, including, importantly, those pertaining to the insurer's UIM liability limit.

"That concern is misplaced. First, no matter what types of offsets ORS 742.504 permits, the maximum amount for which the insurer is liable under its UM coverage is the limit of liability set out on the declarations page of the policy. ORS 742.504(7)(a). Second, ORS 742.502(2)(a) essentially defines the limit of the insurer's liability in the UIM context. That section provides that UIM benefits are "equal to uninsured motorist coverage benefits less the amount recovered from other automobile liability insurance policies." *Nothing in ORS 742.504(7)(c), and certainly nothing in the interpretation of that provision that we announce here, renders those provisions of the statute inoperable.* Thus, even if the insured's damages continue to exceed the policy limits after appropriate deductions from the total damages are taken, the maximum amount for which the insurer will be liable is the limit of liability set out in the declarations. And if, after reducing the amount that the

insured legally would be entitled to recover in the various ways permitted in ORS 742.504(7), the resulting amount is less than the insurer's liability limit, then that resulting amount is the maximum that the insurer will have to pay. The insurer may have to pay, but the payment will never exceed the liability limits that are stated on the declarations page. No unreasonable result obtains."

*Id.* at 608 (emphasis added).

Nothing in the passage quoted above comments on the construction of ORS 742.502(2)(a) or ORS 742.502(3) when those statutes are read in context and effect is given to all of their terms. Moreover, as the emphasized language above makes clear, the court in *Bergmann* did not believe that it was writing ORS 742.502(2)(a) out of the motor vehicle statutes. Rather, it simply pointed out that, no matter how the offset was calculated, an insurer would not have to pay more than the liability limits stated on the declarations page of the policy. Nothing in our holding today conflicts with that observation.

We turn back to the facts of this case. It is undisputed that Perkins had uninsured motorist coverage of $100,000 and that Elster, the motorist who hit Perkins, also carried a liability policy of $100,000. It is further undisputed that Perkins recovered on that policy in full. Thus, Elster is not an underinsured motorist who was insured "for an amount that is less than the insured's uninsured motorist coverage."[8] Accordingly, the trial court erred in granting summary judgment in favor of Perkins rather than in favor of Mid-Century.

For all of the reasons stated above, we reverse and remand for entry of judgment in favor of Mid-Century.

Reversed and remanded for entry of judgment for plaintiff.

---

[8] Nor was Perkins injured by a motor vehicle with "liability insurance that provides recovery in an amount that is less than the insured's uninsured motorist coverage." ORS 742.502(3).