Argued and submitted January 12, affirmed August 1, 2007

Kara DAY-TOWNE,
*Plaintiff-Appellant,*

*v.*

PROGRESSIVE HALCYON INSURANCE COMPANY,
*Defendant-Respondent.*

Jackson County Circuit Court
034378L2; A129849

164 P3d 1205

Kathryn H. Clarke argued the cause for appellant. With her on the briefs was Michael Brian.

Michael A. Lehner argued the cause for respondent. With him on the brief was Lehner & Rodrigues PC.

Thomas M. Christ and Cosgrave Vergeer Kester LLP filed the brief *amicus curiae* for Farmers Insurance Company.

Before Edmonds, Presiding Judge, and Wollheim and Sercombe,* Judges.

SERCOMBE, J.

---

* Sercombe, J., *vice* Riggs, S. J.

**SERCOMBE, J.**

This case concerns the scope of underinsured motorist (UIM) coverage of an automobile liability insurance policy issued to plaintiff Kara Day-Towne by defendant Progressive Halcyon Insurance Company. Plaintiff asserts that the trial court erred in concluding that no further payments were owed under the UIM coverage of the policy and in granting summary judgment to defendant. Plaintiff argues that the UIM coverage of the policy required payment of all damages incurred in a motor vehicle collision with another person's automobile and not otherwise paid by that third party and his or her insurer. Plaintiff also contends that principles of estoppel and waiver obligated defendant to pay some part of her UIM claim because defendant earlier agreed to arbitrate issues of the third party's liability and plaintiff's damages and because an arbitration occurred. Defendant responds that the UIM coverage issue was recently decided against plaintiff's contention in *Mid-Century Ins. Co. v. Perkins*, 209 Or App 613, 149 P3d 265 (2006), *rev allowed*, 343 Or 33 (2007), and that there is no evidence to support plaintiff's waiver and estoppel arguments. We agree with defendant, albeit for different reasons, and affirm.

On March 1, 2002, while insured by defendant, plaintiff was injured in an automobile accident caused by the negligence of William Moore. Plaintiff made a UIM claim under the automobile liability insurance policy issued by defendant. On April 17, 2003, defendant's representative sent a letter to plaintiff's attorney acknowledging that claim and further stating:

> "Please also provide confirmation of Allstate's [Moore's insurer's] liability limits as well as confirmation of their policy limits offer if and when it is made. At this time, your client does not have [defendant's] permission to settle her underlying bodily injury claim.

> "Lastly, pursuant to ORS 742.061(3)(a) and (b), please be advised that [defendant] has accepted coverage for the above captioned matter and the only issues are the liability of the uninsured or underinsured motorist and the damages.

"[Defendant] consents to submit this case to binding arbitration if we cannot resolve this matter."

On December 31, 2003, plaintiff filed a complaint against defendant alleging breach of the insurance contract by failing to pay benefits under the UIM coverage of the policy, and seeking damages and attorney fees. Defendant answered and alleged that plaintiff "does not have an uninsured/underinsured motorist claim as Mr. Moore's liability policy equaled the limits of [the policy issued by defendant]." Defendant also asserted that plaintiff "is not entitled to attorney fees as [defendant] has agreed to resolve this dispute through binding arbitration."

In the proceedings below, the core dispute between the parties was whether Moore was an underinsured motorist under the policy. Defendant contended that Moore was not underinsured because the $100,000 liability coverage limits of Moore's automobile liability insurance policy were the same as the limits of plaintiff's UIM coverage under her policy. For that reason, defendant sought summary judgment that it was not liable under the policy.

Plaintiff's position was that the policy required payment if Moore's insurance was insufficient to pay all of her damages from the accident. She later alleged that defendant had elected to accept "coverage" under the policy by consenting to arbitration of Moore's liability and her damages, or, alternatively, was estopped or had waived its right to deny that "coverage."

Defendant filed its summary judgment motion on November 16, 2004. For reasons not apparent from the record, the parties contemporaneously proceeded to arbitration. An arbitration hearing was held on November 22, 2004. Neither party requested a stay of the trial court proceedings pending arbitration. The record does not reveal the scope of the arbitration. The only clue in the summary judgment record is a November 30, 2004, letter announcing the decision of the arbitration panel, as an "arbitration award" on a "UM/UIM Claim" in "Kara Day-Towne v. Progressive Halcyon Insurance Company, Jackson Co. Circuit Court Case No. 034378L2." The letter provided:

"We find that the motor vehicle accident of March 1, 2002 was a substantial factor in causing claimant Kara Day-Townes low back injury which required surgery.

"All of the medical expenses are related to the MVA and our total award including medicals is $225,000.00."

After receiving the arbitrators' letter, plaintiff filed a motion in the trial court asking permission to file a petition for an order confirming the arbitration award. Defendant opposed the motion, arguing that a grant of its summary judgment motion could preclude the need to enter judgment confirming the award. The trial court granted plaintiff's motion. Plaintiff filed a petition for an order confirming the award. Defendant opposed that petition and asserted that the arbitration concerned only third-party liability and damages, not the legal issue of the scope of the underinsured motorist coverage, and for that reason, the trial court should not grant plaintiff's petition.

At the end of the summary judgment briefing, plaintiff filed a belated reply to defendant's answer to the complaint. The reply asserted that, by consenting to binding arbitration, defendant elected to accept coverage and had waived the right or was estopped from denying that plaintiff was not owed benefits under the UIM portion of the policy.

The trial court did not rule on the petition for an order confirming the award. Instead, the court granted defendant's summary judgment motion, deciding that, because Moore had a liability policy with the same limits as plaintiff's UIM coverage limits, there was no applicable UIM coverage under the policy. The court also determined that the policy's UIM coverage could not be expanded by waiver or estoppel. Plaintiff appeals from the judgment in favor of defendant.

■      Plaintiff pursues the same contentions on appeal, framing two assignments of error. Her second assignment of error—that is, that the court erred in deciding that there was no entitlement to benefits when the limits of Moore's automobile liability insurance policy are the same as plaintiff's

UIM coverage—is resolved by our recent decision in *Mid-Century Ins. Co.* There, we held that a tortfeasor is "under-insured" only if the tortfeasor's automobile liability insurance policy limits are less than the insured's UIM coverage policy limits. Because the limits of plaintiff's UIM coverage were the same as Moore's liability insurance policy limits, Moore was not an underinsured motorist under plaintiff's insurance contract with defendant, and no benefits were owed to plaintiff under the UIM coverage of that policy. 209 Or App at 634-35.

Plaintiff's remaining assignment of error is that the court erred in rejecting her assertions that defendant's initial offer to arbitrate in the April 17, 2003, letter and its later choice to participate in an arbitration were enforceable "elections" to pay benefits under the UIM provisions of plaintiff's policy or, alternatively, estoppels or waivers to the same effect. Plaintiff's argument is based on two statutes. The first is ORS 742.504(10), which governs uninsured motorist insurance policies and is made applicable to underinsured motorist provisions by ORS 742.504(4). ORS 742.504(10) binds an insurer and an insured to the results of an arbitration of certain disputes between them. It provides, in part:

> "If any person making claim hereunder and the insurer do not agree that the person is legally entitled to recover damages from the owner or operator of an [underinsured] vehicle because of bodily injury to the insured, or do not agree as to the amount of payment that may be owing under this coverage, then, in the event the insured and the insurer elect by mutual agreement at the time of the dispute to settle the matter by arbitration, the arbitration shall take place under the arbitration laws of the State of Oregon or, if the parties agree, according to any other procedure. Any judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof[.] * * * The person and the insurer each agree to consider themselves bound and to be bound by any award made by the arbitrators pursuant to this coverage in the event of such election."

Next, under ORS 742.061(1), an insured may recover attorney fees from an insurer if prompt settlement is not made following a proof of claim and the insured recovers

more than the insurer's tender in litigation on the claim. Plaintiff's estoppel argument relies on ORS 742.061(3), which provides an exception to the attorney fee entitlement when an insurer has "accepted coverage" and consented to binding arbitration. ORS 742.061(3) provides:

> "Subsection (1) of this section does not apply to actions to recover uninsured or underinsured motorist benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:

> "(a)   The insurer has accepted coverage and the only issues are the liability of the uninsured or underinsured motorist and the damages due the insured; and

> "(b)   The insurer has consented to submit the case to binding arbitration."

Plaintiff argues that, because defendant "accepted coverage" and consented to binding arbitration with respect to her UIM claim, ORS 742.502(10) and ORS 742.061(3) relieve defendant of its potential obligation to pay plaintiff's attorney fees, but at the expense of an irrevocable agreement to "coverage," which plaintiff takes to mean an entitlement to the payment of some benefits under the UIM insurance. Defendant contends that the April 17, 2003, letter admitted only that the policy's UIM and personal injury protection coverage might apply and that it offered to arbitrate only any issue of Moore's liability for the damages caused by the accident and the extent of plaintiff's damages from the accident. According to defendant, the parties litigated the "coverage" question in the circuit court proceedings. Defendant also contends that the scope of the policy and the meaning of "underinsured motorist" are outside the scope of an arbitration under ORS 742.504(10). Finally, defendant contends that the coverage of the policy, whether benefits are owed when the tortfeasor's policy limits are the same or higher than the limits of UIM coverage, is not something that can be changed by waiver or estoppel.

The parties make those contentions in promoting or opposing plaintiff's first assignment of error. The scope of that assignment determines the relevance of the contentions. Plaintiff states the assignment of error to be that the "trial

court erred in rejecting [plaintiff's] assertions that [defendant's] request for arbitration prevented its assertion that her damages were not covered by her UIM provisions." That could mean only that the trial court erred in granting defendant's summary judgment motion. That summary judgment motion sought a judicial determination that plaintiff was not entitled to relief on the claim asserted in her complaint—a breach of contract claim for failing to pay owed benefits under the insurance contract between the parties. The summary judgment questions are whether evidence of defendant's initial acceptance of coverage in the April 17, 2003, letter and consent to arbitration or proof of the arbitrators' decision either (1) prove that defendant breached its obligations to plaintiff to pay UIM benefits under the policy as pleaded in the complaint, or (2) create material issues of fact that preclude a grant of summary judgment in favor of defendant on that claim. ORCP 47 C.

We first address the legal effect of the April 17, 2003, letter. That letter made two representations potentially relevant to the contractual relationship between the parties alleged in the complaint. In the letter, defendant consented "to submit this case to binding arbitration if we cannot resolve this matter" and "accepted coverage." The consent "to submit this case to binding arbitration" is immaterial to the issue presented in plaintiff's complaint, which is whether defendant breached its contract with plaintiff by failing to pay benefits prior to the filing of the complaint. The claim in plaintiff's complaint was not one to compel arbitration or to enforce an arbitration award. The claim for relief presented in the complaint, and the only claim at issue in defendant's summary judgment motion, was whether defendant breached the insurance contract by failing to pay UIM benefits.

On the other hand, the acceptance of coverage in the letter could pertain to the claim for relief asserted in the complaint. We infer that plaintiff's contention is that the complaint seeks enforcement of the insurance contract not according to its terms, but instead according to the "accepted coverage" agreed to in the April 17, 2003, letter, and that the trial court erred in relieving defendant from that liability.

The text of the complaint states no such claim. It pleads breach of the insurance contract "in force on March 1, 2002," not a contract modified by the April 17, 2003, letter. Instead, the allegations about defendant's election, waiver, and estoppel are made in plaintiff's reply to defendant's answer to the complaint.

■ Plaintiff's reply, however, did not operate to modify the allegations of the complaint or to state new claims.[1] The function of a reply pleading under ORCP 13 B is to "assert any affirmative allegations in avoidance of any defenses asserted in an answer." Defendant's answer did state a purported "affirmative defense" that plaintiff "did not have an uninsured/underinsured motorist claim as Mr. Moore's liability policy equaled the limits of Progressive." That allegation was not an affirmative defense. The pleaded assertion did not avoid the contractual remedy sought in the complaint, as would an affirmative defense. Instead, the assertion denied the claimed breach of contract by stating defendant's understanding of the substance of the insurance contract. The election, estoppel, and waiver allegations in the reply do not undercut a defense to enforcement of the insurance contract, the function of a reply pleading. Rather, they purport to seek enforcement of noncontractual claims against defendant. Any such claim for relief must be stated in a complaint.

No such claims are asserted in the complaint in this case. The only claim at issue that was properly raised in plaintiff's pleadings was whether the insurance contract in force at the time of the accident was breached. Because the complaint does not state claims for relief against defendant based on election, estoppel, or waiver, the trial court did not err in failing to grant relief based on those claims.[2]

■ Even if those claims were properly at issue, as a matter of contract law, the April 17, 2003, letter did not change the express terms of the insurance contract between the parties. No party contends that the letter was an amendment to

---

[1] No permission to amend the complaint was sought or allowed. ORCP 23 A requires "leave of court or * * * written consent of the adverse party" to amend a complaint after the complaint has been answered.

[2] Because the parties do not raise any issue under ORCP 23 B, we do not consider the effect of that rule here.

the insurance policy. It certainly lacked the formalities necessary for an amendment or an additional endorsement to the contract.[3]

■ The letter did not expand the insurance coverage by estoppel. The contention that the terms of coverage of an insurance contract can be expanded by an estoppel of the insurer was rejected in analogous circumstances in *Richardson v. Guardian Life Ins. Co.*, 161 Or App 615, 984 P2d 917, *rev den*, 329 Or 553 (1999). There, the insured, a dentist, purchased business overhead disability insurance. The insured's health deteriorated, and he sought to sell his practice. The insurer's agent represented that the policy would cover the overhead expenses if the sale were structured in a particular way. Later, the insurer denied coverage in those circumstances. The insured filed a complaint asserting a number of claims against the insured, including "estoppel to deny coverage." *Id*. at 619. On review of a judgment in favor of the insurer on that claim, we held that the doctrine of estoppel could "in appropriate circumstances be invoked to preclude an insurer from relying on a condition forfeiting coverage." *Id*. at 625. A condition forfeiting coverage exists when there is insurance coverage for the loss in the first place, but acts of the insured work to lose that coverage (*e.g.*, making a false statement or failing to protect the insured property). An insurer can be estopped in appropriate circumstances from enforcing the condition of forfeiture of the coverage. *Id*. But estoppel cannot work to "expand coverage based upon a representation allegedly made after that coverage was already fixed." *Id*. at 627.

Similarly, in *DeJonge v. Mutual of Enumclaw*, 315 Or 237, 843 P2d 914 (1992), the court held that estoppel could not be invoked to vary an express exclusion in a liability insurance policy. The court held:

---

[3] The insurance contract provided:

"This policy, your insurance application (which is made a part of this policy as if attached hereto), your Declarations Page, as amended, and endorsements issued by us to the policy contain all the agreements between you and us. Subject to the following, its terms may not be changed or waived except by an endorsement issued by us."

"The rule in Oregon supports defendant's contention that, in this situation, estoppel cannot be used to negate an express exclusion in a policy of insurance. In *ABCD . . . Vision v. Fireman's Fund Ins. Companies*, 304 Or 301, 307, 744 P2d 998 (1987), this court held that '[e]stoppel cannot be invoked to expand insurance coverage or the scope of an insurance contract.' The *ABCD . . . Vision* court distinguished between using estoppel affirmatively, to *create* a right to coverage not contained in the insuring clauses of the policy, and using it defensively, to *preserve* a right to coverage already acquired by preventing its forfeiture. The court held that estoppel is not available in the former situation to negate an express exclusion in the written contract but is available in the latter situation to avoid a condition of forfeiture of coverage. 304 Or at 307."

315 Or at 241 (emphasis in original).

That same principle, that estoppel cannot be used to expand the scope of an insurance contract, prevents the expansion of the UIM coverage in plaintiff's policy here because of the representations made in the April 17, 2003, letter. The agent's representation that defendant has "accepted coverage" in this case is no different than the agent's representation about coverage in *Richardson*. The coverage of the insurance policy is not changed by the representation in either case.

■■ Application of the doctrine of waiver yields no different result. Waiver is "the intentional relinquishment of a known right, either in terms or by such conduct as clearly indicates an intention to renounce a known privilege or power. It involves both knowledge and intent, and is based on the idea of consent, express or implied." *Great American Ins. v. General Ins.*, 257 Or 62, 72, 475 P2d 415 (1970). The expansion of covered risks sought by plaintiff is not a relinquishment of any right of defendant. Plaintiff seeks a modification of defendant's contractual obligations to add to her rights, not to subtract a right of defendant. The square peg of that assertion does not fit into the round hole of the doctrine of waiver.

Thus, defendant's transmittal of the April 17, 2003, letter to plaintiff did not change her UIM coverage under the insurance contract. The letter did not modify the contract or operate to create noncontractual or other claims against

defendant. Therefore, evidence of the letter created no barrier to allowance of defendant's summary judgment motion or entry of a judgment dismissing plaintiff's claims.

■ ■ Finally, the occurrence of the arbitration, by itself, does not create an enforceable claim by plaintiff against defendant or preclude summary judgment in defendant's favor. The arbitration would have preclusive effect in this litigation about the scope of coverage only if (1) the parties agreed to arbitrate the scope of the UIM coverage, (2) the arbitration actually decided the issue of UIM coverage, (3) the arbitration award was properly filed and not contested, and (4) judgment was entered on the arbitration. *Westwood Construction Co. v. Hallmark Inns*, 182 Or App 624, 636-37, 50 P3d 238 (2002) (stating the issue preclusive effect of arbitration in certain circumstances). None of those predicates was proved by plaintiff in the summary judgment record.

Under ORS 742.504(10), the binding effect of arbitration of the amount of payment owing under UIM coverage of an insurance contract depends on whether "the insured and the insurer elect by mutual agreement at the time of the dispute to settle the matter by arbitration * * *." The summary judgment record does not show what matters the parties agreed to arbitrate. Without that showing, the legal effect of the arbitration is uncertain.[4] Put another way, the issue-preclusive effect of the arbitration award depends on whether the issue arbitrated is identical to the issue litigated

---

[4] The parties do not discuss the law applicable to conducting arbitration and enforcing an arbitration award. The Oregon Arbitration Act, *former* ORS 36.300 to 36.365 (2001), was repealed by Oregon Laws 2003, chapter 598. The 2003 changes do not apply to "an arbitration agreement made before January 1, 2004." Assuming the agreement to arbitrate arises under the insurance contract between the parties in effect on March 1, 2002 (the day of the accident), the arbitration was regulated by *former* ORS 36.300 to 36.365 in effect prior to the 2003 changes. Under *former* ORS 36.315, if a legal proceeding sought to litigate a matter referable to arbitration, a judge, on application, was required to "abate the action, suit or proceeding so that arbitration may be had in accordance with the terms of the agreement." Plaintiff filed no request for abatement in the proceedings below. The lack of an abatement request implies a disparity of issues between the lawsuit and the arbitration. *Former* ORS 36.350 requires the filing of the arbitration award "together with the written agreement to submit" and a filing fee as a predicate to entering a judgment on the award. The record below shows no such filing. The subsequent process for filing and determining exceptions to the award under *former* ORS 36.355 and ORS 36.360 was not followed.

in the summary judgment proceedings. *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993) (issue preclusion factors include whether "[t]he issue in the two proceedings is identical"). Because plaintiff did not show that the parties actually agreed to arbitrate the legal scope of the UIM coverage of the policy and that the arbitration panel decided that question, the arbitration award did not affect the court's decision on defendant's summary judgment motion.

In sum, the trial court did not err in granting defendant's summary judgment motion on the breach of contract claim pleaded in the complaint. The legal effect of the April 17, 2003, letter and the completed arbitration were not pleaded as bases for relief against the defendant, and the summary judgment record does not support any amendment to the insurance contract by implication or otherwise establish any legal effect of the arbitration award.

Affirmed.